# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2010

No. 09-11225
Summary Calendar

Lyle W. Cayce
Clerk

WILLIAM HARRIS,

Plaintiff - Appellant

v.

NEW WERNER HOLDING CO., INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-1750

Before KING, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

William Harris appeals the district court's judgment that he take nothing for his strict products liability, negligence, and gross negligence personal injury claims against New Werner Holding Co., Inc.  For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-11225

## I. BACKGROUND

### A. Factual Background

In May 2003, William Harris purchased a folding ladder from a Lowe's Home Improvement retail store in Mesquite, Texas. The ladder was designed, manufactured, and marketed by Werner Company. In February 2007, the legs of the ladder collapsed while Harris was using it, and he fell from the ladder, sustaining injuries on the left side of his body.

Meanwhile, in 2006, Werner Company and several related entities[1] (collectively the "Werner Entities") filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Harris filed two Administrative Expense Claims in the bankruptcy court, seeking to recover damages for his injuries arising from the ladder accident.

In 2007, New Werner Holding Co., LLC, a Delaware limited-liability company, was formed to purchase the assets of the Werner Entities. The Delaware bankruptcy court oversaw and approved the sale of these assets, which was accomplished through an asset purchase agreement (the "Asset Purchase Agreement" or "Agreement") that defined, *inter alia*, the scope of liabilities assumed by New Werner Holding Co., LLC. Subsequent to this sale of assets, New Werner Holding Co., LLC, was converted to New Werner Holding Co, Inc. ("New Werner"), a Delaware corporation.

The Agreement further provided that the "Buyer"—New Werner Holding Co., LLC—would assume only certain liabilities of the "Sellers"—the Werner Entities. The agreement defined liability to be:

> any debt, loss, claim, damage, demand, fine, judgment, penalty, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated

---

[1] These entities were: Werner Co., a Pennsylvania corporation; Werner Holding Co., Inc., a Delaware corporation; Werner Holding Co., Inc., a Pennsylvania corporation; and WIP Technologies, Inc., a Delaware corporation.

2

or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

And, relevant to the present matter, the "Assumed Liabilities" included:

> 2.3   Assumed Liabilities
>
> Upon the terms and subject to the conditions of this Agreement, on the Closing Date, Buyer shall execute and deliver to Sellers the Assignment and Assumption Agreement pursuant to which Buyer shall assume and agree to discharge, when due . . . , only the following Liabilities (without duplication) . . . and no others:
>
> . . .
>
> (d)   Customer Product Liability,
>
> All Liabilities of any Seller in respect of the product liability claims of the customers of Sellers listed on Schedule 2.3(d) . . . that exist as of immediately prior to the Closing [of the Agreement].

Following the sale of assets, Harris, the Werner Entities, and the unsecured creditors committee (but not New Werner) agreed, through a stipulation agreement approved by an order of the Delaware bankruptcy court on November 7, 2007, that "[Harris] shall not be entitled to any recovery from [the Werner Entities or the Werner Entities'] estates with respect to [his c]laims as a prepetition or administrative claim or otherwise"; "Harris['s c]laims shall be deemed to have been withdrawn with prejudice against [the Werner Entities but] without prejudice to [Harris's] right to seek recovery [against other entities]; and "[t]o the extent that [Harris's] assertion that the Werner ladder involved was purchased at Lowe's is accurate, [his] claims are Assumed Liabilities under the [Asset] Purchase Agreement, and accordingly, under the Sale Order, [the Werner Entities] have been relieved from any liability with regards to [Harris's c]laims."

On this final point, the stipulation order stated that "[u]nder Section 2.3 of the [Asset] Purchase Agreement, New Werner assumed certain liabilities . . .

3

which included . . . all 'Liabilities of any Seller in respect of the product liability claims of the customers of Sellers listed on Schedule 2.3(d).'" The stipulation agreement further noted that "Schedule 2.3(d) [of the Agreement] identified all of [the Werner Entities'] customers with the exception of Home Depot, Kawan Lama, MAB Paints and Sears," suggesting that the "customers of Sellers" outlined in Schedule 2.3(d) (which appears nowhere in the record before us) were retail stores and other businesses who purchased ladders directly from the Werner Entities.

## B.  Procedural Background

In August 2008, Harris filed suit against New Werner; Lowe's Companies, Inc. (a North Carolina corporation, hereinafter "Lowe's"); and Jeff Kerr (a Texas resident who managed the Lowe's store where Harris bought his ladder) in Texas state court, alleging strict products liability, negligence, and gross negligence causes of action. The defendants removed Harris's suit to the United States District Court for the Northern District of Texas in October 2008 on the basis of diversity jurisdiction. In June 2009, Harris, Lowe's, and Kerr submitted an agreed motion to dismiss the claims against Lowe's and Kerr with prejudice following settlement between the parties; the district court granted the motion.

Harris filed an amended complaint in May 2009, reasserting his claims against New Werner but deleting his claims against Lowe's and Kerr because they were about to settle. In this complaint, Harris described the case as "a products liability cause of action which arises from design, manufacturing and marketing defects of the ladder by Defendant, New Werner . . . ." Harris claimed that: (1) "New Werner[ ] is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce the ladder which was unreasonably dangerous for its reasonably foreseeable use because of the lack of a safe design and safe manufacturing that would have prevented Plaintiff's [accident and injuries]"; (2) "New Werner[ ] was negligent in the design,

manufacture and marketing of the product in question [through various acts or omissions amounting to negligence]"; and (3) "each of [New Werner's] acts or omissions . . . were [sic] more than momentary thoughtlessness, inadvertence, or error in judgment [and] involved an extreme degree of risk [that constituted gross negligence]."

In June 2009, New Werner moved for summary judgment, claiming that: (1) it did not design, manufacture, or market the ladder; (2) it did not "expressly assume" the liabilities of the Werner Entities; (3) no expert testimony supported Harris's claims, as required for the nature of liability alleged; and (4) Harris had "disproved" the causation element of each of his claims. Harris failed to respond to New Werner's summary judgment motion or file any evidence or further pleadings in support of the allegations in his complaint. On September 16, 2009, the district court concluded that there were no genuine issues of material fact as to whether (1) New Werner manufactured, designed, or marketed the ladder and (2) New Werner "expressly assumed" the liabilities of the Werner Entities and granted summary judgment to New Werner, declining to address its other grounds for summary judgment. The district court also entered final judgment, dismissing Harris's claims.

On September 28, 2009, Harris moved for a "new trial" or, in the alternative, sought leave to file a late response to New Werner's summary judgment motion. Harris claimed that a series of unfortunate events coupled with "confusion in attempting to settle the case in good faith" had led to his failure to respond. Harris contended that New Werner had falsely disclaimed "assumption of liability" with respect to his claims. In support of this allegation, Harris pointed to Section 2.3(d) of the Asset Purchase Agreement (without, however, furnishing its accompanying schedule) and, for the first time, mentioned and introduced the stipulation agreement. Harris also attached a response to New Werner's motion for summary judgment, urging that New

No. 09-11225

Werner had expressly assumed liability for his claims through the Asset Purchase Agreement and stipulation agreement such that summary judgment was inappropriate.

The district court construed Harris's motion for a new trial as a motion under Federal Rule of Civil Procedure 59(e) to alter the judgment. The district court determined that Harris's "new evidence"—the stipulation agreement—was not "newly discovered" and that Harris had not shown any manifest error of law or fact in the court's judgment. As such, the district court denied Harris's requests for relief, noting that "even if it were to consider the 'new evidence' offered by [Harris], such evidence would not have changed the outcome." Harris filed a notice of appeal two weeks after this decision, contesting both the grant of summary judgment and the denial of his Rule 59(e) motion.

## II. DISCUSSION

On appeal, Harris raises a number of challenges to the district court's determinations through two issues: (1) whether the district court had "jurisdiction" to issue the summary judgment ruling and, alternatively, (2) whether the district court's summary judgment ruling was proper. We address each in turn.

### A. District Court Jurisdiction

Harris argues that New Werner's "fraudulent[ ] represent[ation] . . . that the term 'Sellers' in the [Asset] Purchase Agreement referred to entities such as Lowe[']s [instead of to the Werner Entities] . . . caused the District Court to issue a ruling interpreting the [Asset Purchase A]greement that was in conflict with the prior orders of the [Delaware] Bankruptcy Court . . . [,] exceeding its jurisdiction."[2] We find no defect in the district court's jurisdiction.

---

[2] Contrary to Harris's assertion, New Werner's motion for summary judgment did not fraudulently disclaim liability. As further discussed below, New Werner admitted that it had assumed certain liabilities through the Asset Purchase Agreement, which may have

6

No. 09-11225

Even though Harris failed to raise his jurisdictional arguments below, "'[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . .'" *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 442 (5th Cir. 2002) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997)).

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Pursuant to 28 U.S.C. § 1334, the [bankruptcy court of a district] has exclusive jurisdiction of all bankruptcy cases under title 11 and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Morrison v. W. Builders of Amarillo, Inc.,* (*In re Morrison*), 555 F.3d 473, 478 (5th Cir. 2009) (quoting 28 U.S.C. § 1334(b)). "Core proceedings[—those that are 'under title 11'—]are those that invoke a substantive right provided by title 11 or could arise only in the context of a bankruptcy case." *Id.* at 479 (quotation marks and alterations omitted)). Harris's suit against New Werner, who was not the debtor in the Delaware bankruptcy proceedings, is not a "core" proceeding for which the Delaware bankruptcy court had exclusive jurisdiction. Further, as explained more fully below, the orders of the Delaware bankruptcy court do not compel the conclusion that New Werner assumed liability for Harris's claims. We discern no defect in the district court's jurisdiction.

## B. Summary Judgment

Harris also challenges the district court's grant of summary judgment to New Werner, contending that the record before the district court indicated that New Werner had assumed liability for his claims. We disagree.

---

encompassed potential claims Harris would bring against Lowe's.

"We review a district court's grant of summary judgment de novo." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 233 (5th Cir. 2010) (quotation marks omitted). "Summary 'judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* at 234 (ellipsis in original) (quoting FED. R. CIV. P. 56(c)(2)). "When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A. C.V.*, 199 F.3d 796, 798 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Harris's argument that New Werner assumed liability for his claims is belied by the record. Both parties agree that the Asset Purchase Agreement governs whether New Werner assumed a certain liability from Werner. This Agreement shows that New Werner was not a "successor" to the Werner Entities, and, relevant to this matter, only assumed liabilities of the "customers of [the Werner Entities]."

New Werner presented the Agreement, the Delaware bankruptcy court's orders, and an affidavit as support for its contention that it did not "expressly assume" liability for the claims Harris raised in his complaint. New Werner did admit, however, that it had assumed certain liabilities including "the liability of Lowe[']s [for claims by purchasers of the Werner Entities' ladders]," but it noted that Harris's claims against Lowe's had been dismissed following settlement.

We need not and do not determine whether Harris has such a potential claim against New Werner based on assumption of liability for claims against Lowe's because Harris's complaint did not raise claims against New Werner based on assumption of liability for a claim against Lowe's. Instead, Harris raised claims against New Werner based on allegations concerning *New Werner's*

conduct: Harris concedes on appeal that New Werner was not involved in the manufacture of the allegedly defective ladder. Further, the causes of action for products liability against a retailer and manufacturer are distinct under Texas law. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (West Supp. 2009) ("Liability of Nonmanufacturing Sellers") *with id.* § 82.005 ("Design Defects"). We will not construe Harris's pleadings to allege a cause of action not presented below. *See Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").[3]

Moreover, the stipulation agreement between Harris, the Werner Entities, and the unsecured creditors committee—which was not before the district court at summary judgment[4]—does not upset this determination. The stipulation agreement clarifies that New Werner assumed only certain liabilities under the Asset Purchase Agreement. To wit, "[t]o the extent that [Harris's] assertion that the Werner ladder involved was purchased at Lowe's is accurate, [his] claims are Assumed Liabilities under the [Asset] Purchase Agreement." In sum, there is no support for the claims in Harris's complaint, and the district court properly granted summary judgment in favor of New Werner.[5]

The bottom line is that Harris had an administrative claim against Werner Co., the manufacturer of the ladder, and a potential claim against Lowe's, the alleged retailer of the ladder. Harris dismissed the administrative

---

[3] Though Harris does not specifically point to error in the dismissal of his negligence and gross negligence claims, we note that they are similarly defeated because Harris alleged liability based solely on New Werner's acts or omissions.

[4] Harris's brief on appeal does not request that we review the correctness of the district court's Rule 59(e) determination. Thus, he has waived any argument on the matter. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) ("[Appellant] has abandoned these arguments by failing to argue them in the body of his brief.").

[5] As we find summary judgment proper on these grounds, we, like the district court, do not consider New Werner's alternative bases for summary judgment.

No. 09-11225

claim pursuant to the stipulation agreement, approved by the bankruptcy court, without prejudice to his potential claim against Lowe's. The latter claim may have been assumed by New Werner under the Asset Purchase Agreement (we say "may" because the critical schedule is missing from the record). But Harris never pleaded such a claim against New Werner. The claims he did plead—product liability claims against a manufacturer—were properly dismissed.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED